## In re PFOHL BROTHERS LANDFILL LITIGATION.

### This Document Relates to All Actions.

#### No. 95–CV–0020A.

United States District Court,
W.D. New York.

March 14, 1997.

Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria LLP (Laraine Kelley, of counsel), Buffalo, NY, for Plaintiffs.

Baron & Budd, P.C. (Frederick M. Baron, of counsel), Dallas, TX, for Plaintiffs.

Nixon, Hargrave, Devans & Doyle LLP (Laurie Styka Bloom, of counsel), Buffalo, NY, for the Liaison Group Defendants.

## DECISION and ORDER

FOSCHIO, United States Magistrate Judge.

### *JURISDICTION*

This case was referred to the under signed by the Honorable Richard J. Arcara on February 2, 1996, for disposition of all discovery issues. It is presently before the court on Defendants' motion to compel discovery and Plaintiffs' motion to adopt Plaintiffs' proposed privilege log.

### *BACKGROUND and FACTS* [1]

This action was commenced on February 14, 1995, by the filing of the first of four essentially identical complaints on behalf of forty-nine plaintiffs, in which Plaintiffs or their decedents seek monetary damages from Defendants, for injuries or deaths from various cancers, which they contend are causally-related to alleged exposure to hazardous and toxic substances from the Pfohl Brothers Landfill in Cheektowaga, New York (the "Landfill"). All of the plaintiffs or their decedents allege that they lived, worked or engaged in recreational activity in the vicinity of the Landfill and that Defendants and third-party Defendants owned, operated, generated or transported materials to the Landfill. Plaintiffs base their claims on neg-

ligence, strict liability, gross negligence, loss of consortium, and wrongful death.

There are several statute of limitations issues presented by this case, as many of the plaintiffs are claiming injuries that were diagnosed twenty or thirty years ago and many of the wrongful death claims involve persons who died during that same period. As it is likely that many of these claims would be time barred under the applicable New York state statutes of limitations, Plaintiffs brought this case in this court to avail themselves of the Comprehensive Environmental Response, Compensation, and Liability Act, ("CERCLA") "federally required commencement date" ("FRCD") provisions of 42 U.S.C. § 9658 ("§ 9658").[2] Although this statute is not a different statute of limitations, recourse to § 9658 provides that the otherwise applicable state statute of limitations is to be measured from the FRCD.[3] The FRCD is defined as "the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages were caused or contributed to by the hazardous substance or pollutant or contaminant concerned." 42 U.S.C. § 9658(b)(4)(A). Here, the Plaintiffs assert that December 19, 1994, was the FRCD, a date that coincides with the meeting attended by Plaintiffs, their attorneys, and the consultants retained by Lipsitz, Green, Fahringer, Roll, Salisbury and Cambria ("Lipsitz, Green"), at which such consultants shared the results of the environmental and health study with Plaintiffs.

Defendants' First Set of Interrogatories ("the Interrogatories")[4] and First Demand

---

1. The fact statement is taken from the complaint, answer, and other papers filed in this action.

2. Under New York state law, the statute of limitations for personal injury torts based on negligence, strict liability, gross negligence and loss of consortium is three years, commencing on the date of the injury. N.Y. C.P.L.R. § 214(5)(McKinney, 1990). The applicable statute of limitations period for wrongful death actions under N.Y. Est. Powers & Trusts Law § 5–4.1 (McKinney 1981 & Supp.1996) is two years. Also, under N.Y.Civ.Prac.L. & R. 214–c(4)(McKinney 1990 & Supp.1996), in the case of personal injuries from toxic torts, if the plaintiff discovers the cause of injury within five years of the discovery of the injury, the plaintiff may invoke the longer of (a) the three year period

from the discovery of the injury; or (b) the one year period from the discovery of the cause. Additionally, for some of these actions, the statute of limitations period is triggered by some event other than discovery of the cause of injury, such as the date of death in wrongful death actions.

3. The statute was upheld against constitutional challenge in *Bolin v. Cessna Aircraft Company*, 759 F.Supp. 692 (D.Kan.1991). Defendants, nevertheless, have raised its constitutionality as a defense.

4. These interrogatories and demands were served on behalf of certain defendants and third-party defendants, who are acting through their Liaison Counsel, Nixon, Hargrave, Devans and

for the Production of Documents and Things Propounded to Plaintiffs[5] ("the Demand for Documents")(collectively "the Discovery Requests") were served on Plaintiffs on October 25, 1995. On February 3, 1996, Judge Arcara issued a First Case Management Order ("CMO–1") which, recognizing that resolution of the statute of limitations issue could result in disposal of the case, limited the first phase of discovery solely to the statute of limitations issue, ordered Plaintiffs to respond to the Interrogatories and Demands for Documents insofar as they relate to the statute of limitations issues, and granted Defendants until June 15, 1996 to file statute of limitations motions for summary judgment.

The Discovery Requests were designed to gather information to identify the correct FRCD, the date when Plaintiffs became aware of their cause of action. The last of Plaintiffs' responses to these Discovery Requests were served on Defendants on April 15, 1996. Defendants, claiming that Plaintiffs' answers to the interrogatories were inadequate "boilerplate" responses which failed to provide any substantive information thus hindering Defendants' preparation of any motion for summary judgment, moved on May 8, 1996 to (1) compel discovery to the Interrogatories and Demands for Documents, and (2) amend the First Case Management Order to extend the time in which Defendants may file statute of limitations motions for summary judgment. Plaintiffs objected to the motion. Oral argument was heard on the motion on June 19, 1996. The court granted such motion on September 5, 1996, directing Plaintiffs to either disclose the requested information, or, in the alternative, to produce a privilege log in accordance with Fed.R.Civ.P. 26(b)(5), by October 14, 1996.

On October 9, 1996, Plaintiffs submitted their proposed Privilege Log ("Privilege Log") containing thirty items for which either the attorney-client or attorney work-product privilege is asserted. Defendants filed, on November 12, 1996, Liaison Group Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for a Privilege Log and in Further Support of Motion to Compel ("Defendants' Memorandum in Opposition"), contending that none of the entries in the Privilege Log meet the requirements for either the attorney-client or work-product privilege and urged the court to order disclosure of each log item.[6] On November 22, 1996, Plaintiffs reasserted their claims of privilege by filing Plaintiffs' Reply Memorandum of Law in Further Support of Plaintiffs' Privilege Log and in Opposition to Defendants' Motion to Compel ("Plaintiffs' Reply Memorandum").

Although Plaintiffs' original blanket assertions of privilege were held improper, Plaintiffs subsequently, in accordance with this court's order of September 5, 1996, provided to Defendants and filed with this court, a proposed Privilege Log. Defendants maintain and the court agrees that neither the Local nor the Federal Rules of Civil Procedure require that a motion be made for the court to formally adopt a proposed Privilege Log. The court finds that Defendants have suffered no harm or prejudice by Plaintiffs' filing of the pending "motion." The ultimate issue is whether Defendants' motion to compel the requested information for which protection against disclosure is sought by Plaintiffs will be granted. Following its initial review of the Plaintiffs' submission, the court

Doyle LLP. These defendants are Westinghouse Electric Corporation, General Motors Corporation, Trico Products Corporation, Curtiss–Wright Corporation, Occidental Chemical Corporation, Laidlaw Waste Systems, Inc., Warner–Lambert Company, Ford Motor Company, New York State Electric & Gas Corporation, and Niagara Mohawk Power Corporation. Other defendants named in this action, Waste Management, Inc. and Browning–Ferris Industries, Inc., and third-party defendant Waste Management of New York, Inc., have also designated Nixon, Hargrave to act as Liaison Counsel. However, these companies had not yet appeared in this action and

thus these demands were not served on their behalf. Third-party defendant Town of Cheektowaga later joined in this motion by Affidavit of Joseph J. Schoellkopf, Jr., Esq., filed May 15, 1996.

5. Exhibit "D" attached to Defendants' Motion Affidavit.

6. On December 10, 1996, Defendant Town of Cheektowaga filed an affidavit incorporating by reference the arguments made in Defendants' Memorandum in Opposition.

was unable to determine, based on the contents of the proffered Privilege Log, whether Plaintiffs have justifiably asserted the privileges as to the documents contained in the Privilege Log. On December 17, 1996, the court therefore ordered Plaintiffs to produce the documents listed in the Privilege Log for an *in camera* review to determine whether they are protected from disclosure by the attorney-client privilege or work-product doctrine. On December 26, 1996, Plaintiffs delivered the requested documents to the court.

The following recapitulation of the items included in the Privilege Log describes the nature of the documents as to which Plaintiffs contend are protected from disclosure.

According to the Privilege Log, item No. 1 is a status report prepared in April 1994, by Plaintiffs' attorneys, Lipsitz, Green. The stated purpose of this document is "[t]o update clients on actions that the law firm had taken and was planning to take on their behalf and in pursuit of a lawsuit regarding the Pfohl Brothers Landfill." Plaintiffs claim this document is protected from disclosure by both the attorney-client privilege and work-product doctrine.

Privilege Log item No. 2, titled "Response to NYSDOH (New York State Department of Health) report of incidence of cancer at 1020 Rein Road," dated September 12, 1994, prepared by a consulting expert retained by Lipsitz, Green, for use by Lipsitz, Green, is a scientific critique of the NYSDOH report regarding the incidence of cancer at 1020 Rein Road with respect to the proposed Pfohl Brothers Landfill. Plaintiffs' assert that this qualifies as attorney work-product.

Item No. 3 in the Privilege Log is a document titled "Most Frequently Asked Questions" prepared in May 1996 by Joe and Gale Frazer, alleged clients and agents of clients of Lipsitz, Green. The purpose of item No. 3 is to update the Plaintiffs on their attorneys' actions with regards to their lawsuit. The attorney-client privilege is claimed by Plaintiffs as to this document.

Privilege Log items Nos. 4, 5, and 6, are environmental health studies, dated subsequent to Plaintiffs' alleged FRCD, prepared

by consulting experts retained by Lipsitz, Green, to study the risk of developing cancer relative to residing in the vicinity of the Landfill. Plaintiffs urge that these reports are protected from disclosure by the work-product doctrine.

Privilege Log item No. 7 is an executed 1994 informed consent form for one of the participants in the 1994 health study. The informed consent form was prepared by the health study consulting experts to inform such participants about the health study. Plaintiffs claim this is protected work-product.

Items Nos. 8 and 9 in the Privilege Log are letters from the consulting experts retained by Lipsitz, Green, to Michael A. Ponterio, Esq., former associate counsel at Lipsitz, Green, containing the results of testing on individual clients' properties. Privilege Log item 10, dated May 17, 1994, charts the results of the tests performed on individual clients' properties. The work product doctrine is asserted as protecting these letters from disclosure.

Privilege Log items Nos. 11, 12, 13, 14 and 15 are "Newsletters" respectively dated April 4, 1994, May 19, 1994, June 21, 1994, August 1994, and November 1, 1994, and prepared by Joe and Gale Frazer, clients of Lipsitz Green, allegedly on behalf of Lipsitz, Green, for the purpose of keeping the attorneys' clients up-to-date on the progress of the Pfohl Brothers litigation. Plaintiffs assert these documents are protected by both the attorney-client and work-product doctrine, except for item No. 11 for which only attorney work-product protection is claimed.

Privilege Log items Nos. 16, 17, 18, 19, 20, and 22 are agendas for meetings held on March 22, 1994, January 17, 1995, April 10, 1995, July 17, 1995, October 2, 1995, and November 13, 1995, respectively, prepared by Joe and Gale Frazer. These agendas list the topics to be discussed at meetings which Plaintiffs claim were held between the clients and their attorneys regarding the Pfohl Brothers Landfill litigation. Similarly, Privilege Log item No. 21, dated October 26, 1995, although labeled a "Memorandum," was also prepared by Joe and Gale Frazer on behalf of Lipsitz, Green, with a stated pur-

pose of advising clients of the topics to be discussed at the next attorney-client meeting. Protection by both the attorney-client privilege and work-product doctrine are claimed for these documents.

Privilege Log item No. 23 is a document prepared on April 26, 1995, by consulting experts retained by Lipsitz, Green, charting in map form the results of the health study. It was allegedly distributed to the clients of Lipsitz, Green. Plaintiffs assert that this map qualifies as attorney work-product and thus need not be disclosed.

Items Nos. 24, 25, 26, 27, and 28 in the Privilege Log are letters from Lipsitz, Green to persons asserted to be their clients informing them of litigation strategies. Plaintiffs claim attorney-client privilege as to these letters.

Privilege Log item No. 29 refers to oral communications between attorneys and clients at all attorney-client meetings held between March 22, 1994 and September 10, 1996, inclusive, at which litigation strategies pertaining to the Pfohl Brothers Landfill lawsuit were discussed. Attorney-client privilege is asserted as to this communication.

Finally, Privilege Log item No. 30 refers to oral communications between consulting experts retained by Lipsitz, Green, and clients at a meeting held on April 29, 1995, at which such consulting experts explained the results of the health study. Plaintiffs allege protection from disclosure by the work-product doctrine.

For the reasons listed below, Defendants' motion to compel discovery is GRANTED in part, and DENIED in part, and Plaintiffs' motion to adopt the Plaintiffs' Proposed Privilege Log is GRANTED in part, and DENIED in part.

### DISCUSSION

■ Federal Rule of Civil Procedure 26(b)(1) states that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action...." Information is relevant so long as it is reasonably calculated to lead to the discovery of admissible evidence. *Daval Steel Products v. M/V*

*Fakredine,* 951 F.2d 1357, 1367 (2d Cir.1991). It is not grounds for an objection that the information sought will be inadmissible at trial so long as the material requested could lead to other information that may be relevant to the subject matter of the action. *Id.,* at 1367.

In this case, Defendants seek the production of documents pertaining to the issue of when Plaintiffs' claim accrued for statute of limitations purposes, *i.e.,* the FRCD, including the environmental and health studies prepared by outside consultants retained by Plaintiffs' attorneys, newsletters, meeting agendas and notes from meetings between Plaintiffs and their attorneys, and attorney letters. Plaintiffs have argued that the information sought by the Defendants either falls within the attorney-client privilege, is protected by the work product doctrine, or both.

■ The party invoking the attorney-client privilege or work-product doctrine has the burden of establishing the applicability of such privilege or protection. Fed.R.Civ.P. 26(b)(5); *United States v. Stern,* 511 F.2d 1364, 1367 (2d Cir.), *cert. denied,* 423 U.S. 829, 96 S.Ct. 47, 46 L.Ed.2d 46 (1975)(burden of establishing attorney-client privilege); *In re Grand Jury Subpoena Dated December 19, 1978,* 599 F.2d 504, 510 (2d Cir.1979)(burden of establishing work-product doctrine). Mere conclusory or *ipse dixit* assertions of privilege are insufficient to satisfy this burden. *United States v. Kovel,* 296 F.2d 918, 923 (2d Cir.1961). The party claiming the privilege must supply opposing counsel with sufficient information to assess the applicability of the privilege or protection, without revealing information which is privileged or protected. *United States v. Construction Products Research, Inc.,* 73 F.3d 464, 473 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 294, 136 L.Ed.2d 213 (1996). Specifically, the Federal Rules of Civil Procedure provide,

When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that,

without revealing the information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection. Fed.R.Civ.P. 26(b)(5).

Rule 26(b)(5) requires that the party asserting the privilege or protection must specifically identify each document or communication, and the type of privilege or protection being asserted, in a privilege log. *Labatt Limited v. Molson Breweries*, 1995 WL 23603, \*1 (S.D.N.Y.1995).

 It is basic that as "discovery provisions are to be applied as broadly and liberally as possible, the privilege limitation must be restricted to its narrowest bounds." *Hickman v. Taylor,* 329 U.S. 495, 506, 67 S.Ct. 385, 391, 91 L.Ed. 451 (1947). Also, although the party asserting the privilege may establish that the elements of the privilege have been met, disclosure of the information may still be warranted if one of the exceptions to the privilege protection is present or if the privilege has been waived. Additionally, the two privileges must be separately asserted as they are grounded in different policies and waiver of the attorney-client privilege will not result in automatic disclosure of a communication that still enjoys work-product immunity. *In re Grand Jury,* 106 F.R.D. 255 (D.N.H.1985). In this case, Plaintiffs urge that many of the items listed in the proposed Privilege Log are protected by both the attorney-client privilege and the work-product doctrine.

### 1. *Attorney–Client Privilege*

 The court must apply the forum state's choice of law rules where jurisdiction is based on diversity. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Further, as the alleged torts in the instant case occurred within New York and the parties do not dispute that, New York law applies. *O'Rourke v. Eastern Air Lines, Inc.,* 730 F.2d 842, 847 (2d Cir. 1984)(court determined that under New York state choice of law, state law applies in tort action where alleged tort occurred in New York and source of federal jurisdiction was diversity). Jurisdiction in this case is based on diversity and as such, the applicability of the attorney-client privilege to each Privilege Log item for which it is asserted is governed under New York state law. There are, however, few differences between federal law and New York state law relevant to the attorney-client privilege. *Bowne of New York City, Inc. v. AmBase Corp.,* 161 F.R.D. 258, 264 (S.D.N.Y.1995).

 The purpose of the attorney-client privilege is to promote full and frank communication between attorneys and their clients by assuring clients that their disclosures will be held in confidence. *Upjohn Company v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981); *Allen v. West Point–Pepperell, Inc.,* 848 F.Supp. 423, 427 (S.D.N.Y.1994)(federal court sitting in diversity applied New York state law to attorney-client privilege); *Priest v. Hennessy,* 51 N.Y.2d 62, 431 N.Y.S.2d 511, 513–14, 409 N.E.2d 983, 985–86 (1980). The attorney-client privilege attaches where legal advice of any kind is sought from a professional legal advisor in his capacity as such, and the communications relating to that purpose, made in confidence by the client, are at this instance protected from disclosure by himself or by the legal advisor, except if the privilege is waived. *People v. Belge,* 59 A.D.2d 307, 399 N.Y.S.2d 539, 540 (4th Dep't. 1977).

 The attorney-client privilege protects only those communications between an attorney and his client made for the purpose of securing legal advice. N.Y. C.P.L.R. 4503(a) (McKinney 1996); *Rossi v. Blue Cross and Blue Shield of Greater New York,* 73 N.Y.2d 588, 542 N.Y.S.2d 508, 510–511, 540 N.E.2d 703, 705–706 (1989). The privilege protects communications rather than facts and the privilege does not impede disclosure of facts unless such disclosure would reveal confidential communications. *Allen v. West Point–Pepperell, supra,* at 427, citing *Upjohn, supra* at 395–96, 101 S.Ct. at 685–86. Additionally, the privilege is triggered only by a client's request for legal, as opposed to business, advice. *People v. Belge, supra.* Where there is a clear intention that a document, such as a business proposal, communicated to counsel is to be provided to a third party, the privilege is rendered inapplicable

as the document is not intended to be confidential. *Eisic Trading Corp. v. Somerset Marine, Inc.*, 212 A.D.2d 451, 622 N.Y.S.2d 728 (1st Dep't.1995). Additionally, a document is not privileged merely because it was prepared by an attorney for a client. The document must contain confidential communication relating to legal advice. *In re Jack Alpert*, 214 A.D.2d 316, 624 N.Y.S.2d 588, 588–89 (1st Dep't.1995).

As discussed, the party asserting the privilege and resisting discovery has the burden of establishing the existence of the privilege. *West Point–Pepperell, supra,* at 427–28. In order for the attorney-client privilege to attach, Plaintiffs must demonstrate that (1) the asserted holder of the privilege is or sought to become a client, (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate, and (b) in connection with this communication is acting as a lawyer, (3) the communication relates to a fact of which the attorney was informed by his client for the purpose of securing legal services, a legal opinion, or assistance in a legal proceeding, and (4) the privilege has been claimed, and not waived, by the client. *See West Point–Pepperell, supra,* at 427.

In this case, Plaintiffs contend that the attorney-client privilege protects Privilege Log items Nos. 1, 3, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 24, 25, 26, 27, 28, and 29, from disclosure. There is no question that these Privilege Log items Nos. 1, 24, 25, 26, 27, 28 and 29, the Status Report, attorney letters, and oral communications from various meetings held between attorneys and Plaintiffs, and for which Plaintiffs have asserted the attorney-client privilege, are communications between at least some of the current Plaintiffs and their attorneys. It is not, however, clear that when items Nos. 1, 24, 25, 26, and 29 were prepared, an attorney-client relationship existed between Plaintiffs and Lipsitz, Green, as many of these items were dated prior to the asserted FRCD when Plaintiffs claim their claim accrued. Nor is it clear that Privilege Log items Nos. 3 ("Most Frequently Asked Questions"), 12, 13, 14, and 15 (newsletters), and 16, 17, 18, 19, 20, 21 and 22 (Meeting agendas), are communications between clients and their attorneys as they were prepared not by Lipsitz, Green, but by Joe and Gale Frazer, whom Plaintiffs allege were clients and agents of clients of Lipsitz, Green. The question of whether the Frazers qualify as "agents of clients," thus extending the attorney-client privilege to their communications need not be reached as the court has determined that the privilege has been otherwise waived as to the documents prepared by the Frazers.

The attorney-client privilege is absolute and exceptions to the privilege exist only to the extent that public policy strongly weighs in favor of disclosure, such as to prove the breach of a fiduciary trust, criminal activity, or fraud. *Priest v. Hennessy, supra.* No such exceptions to the attorney-client privilege are present here. Also, although Defendants could depose each Plaintiff in an attempt to elicit testimony indicating that Plaintiffs knew or should have known the cause of their injuries earlier than their asserted FRCD of December 19, 1994, there is no hardship exception to the attorney-client privilege. *Kenford Co., Inc. v. County of Erie,* 55 A.D.2d 466, 390 N.Y.S.2d 715, 718 (4th Dep't.1977). Thus, even if Defendants demonstrate of a substantial need for the items that are protected by the attorney-client privilege, such items will remain protected from disclosure until and unless that privilege is waived.

The attorney-client privilege belongs to the client who may either expressly or impliedly waive it. *Manufacturers and Traders Trust Company v. Servotronics, Inc.,* 132 A.D.2d 392, 522 N.Y.S.2d 999, 1005 (4th Dep't.1987). An express waiver occurs by failing to preserve or maintain the confidentiality of a communication between a client and attorney. *Jakobleff v. Cerrato, Sweeney & Cohn,* 97 A.D.2d 834, 468 N.Y.S.2d 895, 897 (2d Dep't.1983). Confidentiality is an essential element of the privilege and divulging otherwise protected information to third parties destroys the confidentiality of such communications and thus waives the privilege. *Eigenheim Bank v. Halpern,* 598 F.Supp. 988, 991 (S.D.N.Y.1984)(federal court sitting in diversity applied New York state law in determining whether attorney-

client privilege had been established); *People v. Harris,* 57 N.Y.2d 335, 456 N.Y.S.2d 694, 697, 442 N.E.2d 1205, 1208 (1982). Assuming *arguendo* that the attorney-client privilege originally attached to all these documents, the court finds that such privilege has been waived as to items Nos. 1 ("Status Report"), 3 ("Most Frequently Asked Questions"), 12, 13, 14, and 15 (newsletters), 16, 17, 18, 19, 20, 21, and 22 (meeting agendas), and 29 (attorney-client meetings) because Plaintiffs have not established that the confidentiality of these communications has been preserved or maintained between Plaintiffs and their attorneys.

None of the documents for which the attorney-client privilege is asserted is marked "confidential" nor contains any indication that the communication included legal advice or was to remain confidential between only clients and attorneys. For many of these documents there is no indication on the documents as to whom they were distributed. Moreover, the meeting agendas, items Nos. 16, 17, 18, 19, 21, and 22, state on their face that they were distributed to the "Pfohl Area Homeowners and Residents Coalition," "former and current residents of the Pfohl Road Landfill," and the "Pfohl Coalition," although Plaintiffs have not identified specifically in whose presence these communications were made. While Plaintiffs have submitted several attorney affidavits in support of their contention that these documents were intended to be confidential, those affidavits do not establish that these communications were kept confidential between only the Plaintiffs and the attorneys. For example, in the attorney affidavits of Robert L. Boreanaz and Michael A. Ponterio, it is stated that to the best of their knowledge, the newsletters and agendas were not distributed to anyone other than clients of Lipsitz, Green. Exhibit B, ¶¶ 5 and 6, and Exhibit C, ¶¶ 5 and 6, to Plaintiffs' Memorandum of Law in Support of Motion for a Privilege Log. Although such sworn statements are not conclusory, they nevertheless fail to establish that the materials were in fact distributed only to clients and are inadequate to support application of the privilege. *See In re Jack Alpert, supra,* (mere fact that documents referred to communications between individuals identified as attorneys and individuals who later became clients was insufficient to establish that attorney-client privilege relationship existed when document was prepared).

Nor have Plaintiffs supplied any lists as to whom the status reports, newsletters, agendas, and other documents were distributed, nor any attendance sheets establishing that no one other than the Plaintiffs and their attorneys were present at the various meetings for which the agendas were prepared, or that the Plaintiffs by then had in fact become clients, or had sought legal advice from Lipsitz, Green, when they received the newsletters and attended the meetings. In fact, Defendants observe that Exhibit K to Plaintiffs' Memorandum of Law in Support of Motion for a Privilege Log is an affidavit in which the affiant, Flora Mueller, identifies herself as a plaintiff, although her name is not listed in the caption of any of the lawsuits that had been filed in the pending actions, further indicating the disclosure to third-parties of information which Plaintiffs assert is subject to attorney-client privilege. Liaison Group Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for a Privilege Log and in Further Support of Motion to Compel, at p. 9. Plaintiffs state that although Mueller was not a plaintiff when she made the questioned affidavit, Mueller was a client of Lipsitz, Green at the time and was expected to be named as a plaintiff in a soon to be filed action. Plaintiffs' Reply Memorandum of Law, at p. 9. To support their position, Plaintiffs also submitted a copy of Mueller's retainer agreement. Exhibit 4 to Plaintiffs' Reply Memorandum of Law. Significantly, the date on which such agreement was executed has been redacted without explanation. *Id.* Without further evidence to support a finding that Mueller was a client on the date of the affidavit, the court finds Plaintiffs have failed to meet their burden as to these items.

 Plaintiffs admit that the meetings were attended by clients and family members of clients, although no precise reason for such family members attending such meetings is given other than a blanket assertion that assistance was needed by some clients. This assertion is relevant as the presence of

a third party will not waive the attorney-client privilege where such third party's presence is necessary to facilitate communication between the client and the attorney. *People v. Hairston,* 111 Misc.2d 691, 444 N.Y.S.2d, 853, 855 (Sup.Ct.1981). Where a third party's presence was required merely to assist the client in physically attending a meeting with an attorney waiver of the attorney-client privilege will occur if the third party remains at such meeting while legal advice is given. *People v. Osorio,* 75 N.Y.2d 80, 84, 550 N.Y.S.2d 612, 549 N.E.2d 1183 (1989). In this case, nothing has been provided establishing which Plaintiffs required assistance in communicating with the attorneys or that they were excused while discussions now sought to be considered as privileged were held.

Because Plaintiffs' have not met their burden of establishing that Privilege Log items Nos. 1, 3, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, and 29, are communications between only attorneys and clients, were made in confidence and which have been maintained in confidence, or that an attorney-client relationship had been established at the time these communications were made, Plaintiffs have not established that these items warrant protection from disclosure by the attorney-client privilege.

■■■■ The attorney-client privilege may also be impliedly waived. It is settled that no party to litigation may invoke the attorney-client privilege where "to do so would in effect enable them to use as a sword the protection which the Legislature awarded them as a shield." *Bennett v. Oot & Associates,* 162 Misc.2d 160, 616 N.Y.S.2d 163 (Sup. Ct.1994); quoting *Pappas v. Holloway,* 114 Wash.2d 198, 787 P.2d 30 (1990). The attorney-client privilege must give way "where invasion of the privilege is necessary to determine the validity of the client's claim or defense...." *Jakobleff, supra,* at 897. Thus, when a party to litigation takes an action which places information that is otherwise protected by the attorney-client or work-product privilege "at issue," the asserted privilege is impliedly waived. *See People v. Edney,* 39 N.Y.2d 620, 385 N.Y.S.2d 23, 25–26, 350 N.E.2d 400, 402–403 (1976)(where

defendant invoked both physician-patient and attorney-client privilege to prevent prosecution from calling treating psychiatrist to testify, court held that pleading innocence by reason of insanity placed defendant's mental state at issue, thus waiving any claim of privilege otherwise applicable to it);

An implied waiver of the attorney-client privilege pursuant to the "at issue" doctrine has been found in situations similar to the instant case. *See Bowne v. AmBase Corporation,* 150 F.R.D. 465, 488 (S.D.N.Y.1993), *aff'd by* 161 F.R.D. 258 (S.D.N.Y.1995)(otherwise privileged communications put in issue where party "asserts a factual claim the truth of which can only be assessed by examination of a privileged communication"); *New York TRW Title Insurance Inc. v. Wade's Canadian Inn and Cocktail Lounge Inc.,* 225 A.D.2d 863, 638 N.Y.S.2d 800 (3d Dep't.1996)(defendant's contention that he never intended to create an equitable mortgage placed the parties' intent at issue, thereby waiving the attorney-client privilege and allowing plaintiff to depose defendant's attorney regarding communications with client pertaining to the underlying transaction); *Orco Bank, N.V. v. Proteinas Del Pacifico, S.A.,* 179 A.D.2d 390, 577 N.Y.S.2d 841 (1st Dep't.1992)(where plaintiff bank sued company for fraudulent misrepresentation, bank placed communications with its attorney at issue by asserting reliance on allegedly false letters of safekeeping produced by defendants and tendered to it as security for a loan from bank); *Bennett v. Oot, supra,* (legal malpractice action based on an expired statute of limitations in which communications between plaintiff and current attorney were placed at issue for making determination of when former attorney was in possession of certain facts which would have alerted competent counsel of his client's potential liability).

Federal courts have also, consistent with New York law, found an implied waiver of the attorney-client privilege pursuant to the "at issue" doctrine. *See United States v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir.), *cert. denied,* 502 U.S. 813, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991)(defendant client's advice of counsel basis for "good faith belief" that

securities transactions were not fraudulent as a defense to stock fraud indictment placed legal advice evidencing client's knowledge of the law directly in issue); *WLIG–TV, Inc. v. Cablevision Systems Corp.*, 879 F.Supp. 229 (E.D.N.Y.1994)(plaintiff's invocation of equitable doctrines of fraudulent concealment and fraudulent inducement to bypass a statute of limitations bar placed plaintiffs' knowledge of when its claim accrued directly in issue). *But cf., Standard Chartered Bank v. Ayala International Holdings, Inc.*, 111 F.R.D. 76, 82, 84 (S.D.N.Y.1986)(by asserting a counterclaim of justifiable reliance on oral representations made by plaintiff lender before agreeing to guarantee the loan, defendant loan guarantor did not place information loan guarantor had received from its attorneys at issue because the issue was not what *objective* facts the guarantor had received from its attorneys regarding the lender's oral statements, but the loan guarantor's *subjective* reliance on such oral statements; however, waiver could have been found if the lender had presented evidence of loan guarantor's receipt of new factual information or expert analysis of known facts revealing that guarantor's reliance on the lender's oral statements was not justified).

Here, evidence that is necessary to determine the correct FRCD has been placed "at issue" as Plaintiffs have invoked the FRCD as a "sword" to overcome the otherwise applicable time bars to their claims based upon their lengthy periods of exposure to toxic wastes generated by Defendants and dumped at the Pfohl Brothers Landfill. Plaintiffs allege liability for injuries and deaths occurring many years prior to the FRCD. Because the FRCD is defined as "the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages were caused or contributed to by the hazardous substance or pollutant or contaminant concerned," 42 U.S.C. § 9658(b)(4)(A), claiming December 19, 1994 as the FRCD has enabled Plaintiffs to bring actions which may otherwise be time-barred. Responses to Defendants' First Set of Interrogatories, Nos.

8(a) and 9, attached as Exhibits E and F to Affidavit of Laurie Styka Bloom, dated May 8, 1996. Plaintiffs' uniform position that they did not know, nor could not have reasonably discovered the cause of their injuries earlier than December 19, 1994 places at issue the nature of the information received at the December 19th meeting and how it differed qualitatively from all the information of which Plaintiffs were previously aware or could have learned earlier such that all of the Plaintiffs, simultaneously, discovered for the first time at the meeting that the instant claims existed. Discovery of precisely what was stated at the meeting may also reveal that the attorneys confirmed that Plaintiffs had previously accrued causes of action and that they would initiate suit should Plaintiffs authorize them to do so.[7] The answers to these questions, as well as others Defendants may formulate, are manifestly relevant to the key issue as to when sufficient relevant *objective* facts, upon which Plaintiffs' knowledge of the cause of their injuries is based, were first available to Plaintiffs. A fair determination of this threshold question can not be made unless Defendants are allowed to compare the objective factual information available to Plaintiffs prior to the asserted FRCD with the new objective information presented to Plaintiffs on December 19, 1994. As Plaintiffs refuse discovery of information imparted at the meeting based on the privilege, it is as unfair to prevent Defendants access through discovery to this same information where Plaintiffs have the burden of proof to establish the FRCD as it would be to prohibit cross-examination of Plaintiffs at trial on this issue by their assertion of the privilege. Such a selective use of the privilege could "garble" the truth and should not be permitted. *United States v. St. Pierre*, 132 F.2d 837, 840 (2d Cir.1942)(Fifth Amendment)(L. Hand, J.), *cert. denied as moot*, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199 (1943).

▆ Further, waiver of the attorney-client privilege is appropriately found when "the benefit to be gained from disclosure outweighs the resulting injury to the attor-

---

7. According to the record, only one Lipsitz, Green attorney, Michael A. Ponterio, Esq., may have participated in the meeting. *See* Plaintiffs'

Responding Affidavit to Defendant's Motion to Compel Discovery, at p. 8, ¶ 19.

ney-client relationship." *Standard Chartered Bank, supra,* at 85, *citing* 8 J. Wigmore, Evidence § 2285 at 527 (McNaughton rev. 1961). Litigation of a class action toxic tort case such as the instant case will in all likelihood be extremely costly and time consuming for all the parties. That fact was implicitly recognized by the court in issuing the first case management order restricting discovery in this case to that which was necessary for resolution of the statute of limitations issue. *See WLIG–TV, supra,* at 235. Thus, the benefit to all parties to be gained from early resolution of the statute of limitations issue clearly outweighs any resulting harm to the attorney-client privilege.

■ Based upon the foregoing discussion, the court concludes that Plaintiffs have impliedly waived the attorney-client privilege with regards to Privilege Log items prepared prior to the asserted FRCD, being Privilege Log items Nos. 1, 12, 13, 14, 15, 16, 24, 25, 26, 27 and 29.

The attorney-client privilege will not, therefore, protect Privilege Log items Nos. 1, 3, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 24, 25, 26, 27, and 29 from disclosure either because Plaintiffs have not established that such privilege originally attached, or because the privilege has been impliedly waived. Work-product immunity, however, has also been asserted with regard to Privilege Log items Nos. 1, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, and 22, and, notwithstanding the court's finding of a waiver of the attorney-client privilege relating to these items, discovery of those items should be ordered only if the work-product doctrine does not apply. Privilege Log Items Nos. 3, 24, 25, 26, 27 and 29 must be disclosed as the attorney-client privilege has been waived and as no protection from disclosure based on work-product doctrine was ever asserted as to them. Privilege Log item No. 28, a letter from Lipsitz, Green to Frank Mueller, remains protected from disclosure by the attorney-client privilege because it is clearly written to a client, dated after the assertion of the FRCD, and does not contain information pertinent to the determination of the FRCD. Additionally, the fact that no work-product immunity has been asserted as protecting this document from disclosure is therefore irrelevant.

## 2. *Work–Product Doctrine*

■ Federal law governs the application of the work-product privilege because it is not a traditional substantive privilege, but, instead, provides qualified immunity from discovery. *Railroad Salvage of Connecticut, Inc. v. Japan Freight Consolidators, (U.S.A.), Inc.,* 97 F.R.D. 37, 39–40 (E.D.N.Y. 1983); *Merrin Jewelry Co. v. St. Paul Fire & Marine Insurance Co.,* 49 F.R.D. 54, 56 (S.D.N.Y.1970).

■ The purpose of the work-product doctrine is to establish a zone of privacy for the attorney in planning litigation strategy and to prevent an adverse party from "piggybacking" on such attorney's trial preparation work product. *United States v. Adlman,* 68 F.3d 1495, 1501 (2d Cir.1995). Although the attorney-client privilege extends only to communications and not to underlying facts which may be communicated, the work product doctrine may extend to protect from disclosure certain factual information sought by Defendants which was prepared in anticipation of litigation. Fed.R.Civ.P. 26(b)(3); *Allen, supra,* at 427–28. Work-product protection is extended to "the files and the mental impressions of an attorney ... reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways" prepared in anticipation of litigation. *Hickman v. Taylor, supra,* at 510–11, 67 S.Ct. at 393–94. The rationale preventing disclosure of work prepared in anticipation of litigation is to preclude one litigant from preparing his case through the efforts of the adversary. *Hickman, supra,* at 516, 67 S.Ct. at 396.

■ In federal actions, to determine whether information should be protected as work product, it must "(1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation and (3) was prepared by or for a party, or by or for his representative." *Brock v. Frank Panzarino, Inc.,* 109 F.R.D. 157, 159 (E.D.N.Y.1986) (quoting *In re Grand Jury Subpoenas Dated December*

*18, 1981 and Jan. 4, 1982*, 561 F.Supp. 1247, 1257 (E.D.N.Y.1982)).

Plaintiffs claim that Privilege Log items Nos. 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, and 30, are protected from disclosure by the work-product doctrine.

██ Upon careful examination, the court has determined that Privilege Log items Nos. 16, 17, 18, 19, 20, and 22, the meeting agendas, and item No. 21, the memorandum of the upcoming meeting, do not convey Plaintiffs' attorneys' mental thoughts, impressions, or strategies concerning the case. Thus, they do not meet the definition of attorney-work product and must be produced.

██ Privilege Log item No. 30, however, refers to oral communications between Plaintiffs and their counsel at a meeting held on April 29, 1995. The attorney work-product doctrine, however, protects only *tangible* documents prepared by an attorney or by an attorney's agent and on behalf of the attorney. *United States v. Nobles*, 422 U.S. 225, 238–39 and n. 13, 95 S.Ct. 2160, 2170 and n. 13, 45 L.Ed.2d 141. If any notes were taken by Plaintiffs at the April 29, 1995 meeting they would not qualify as attorney work-product because they were not prepared by Plaintiffs' attorneys or any agent of Plaintiffs' attorneys. Additionally, *oral* communications are not tangible documents for purposes of the work-product doctrine. Thus all notes taken by Plaintiffs at the April 29, 1995 meeting, if any, must be disclosed.

██ Additionally, as a threshold matter, the party seeking to invoke work product protection must establish that the documents at issue were prepared in anticipation of litigation. *Matter of Grand Jury Subpoenas*, 959 F.2d 1158, 1166 (2d Cir.1992). The initial inquiry is "whether, in light of the nature of the documents and the factual situation involved in a particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *Litton Industries, Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 125 F.R.D. 51, 54 (S.D.N.Y. 1989); *see also* 8 Wright & Miller, Federal Practice & Procedure § 2024, at p. 198. The

protection from disclosure offered by Rule 26(b)(3) requires a more immediate showing than the remote possibility of litigation; "litigation must be a real possibility at the time of preparation or ... the document must be prepared with an eye to some specific litigation." *James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138, 143 (D.Del.1982)

Assuming, for the sake of this discussion, that December 19, 1994, as the FRCP, *i.e.*, the date when Plaintiffs assert enough facts were available to Plaintiffs such that Plaintiffs knew or reasonably should have for the first time discovered a nexus between the dumping of the alleged toxic substances at the Landfill and their injuries, it is clear that Privilege Log Items Nos. 1 (Status Report), 2 (critique of NYSDOH study), 7 (informed consent form), 10 (chart of property test results), 11, 12, 13, 14, and 15 (newsletters), were all prepared *before* the date Plaintiffs claim to have first discovered the cause of their injuries. It follows that based on Plaintiffs' stated position that there was no reasonable basis to believe they had a claim earlier than December 19, 1994, and thus no litigation could have been contemplated, those documents were prepared before the prospect of litigation against Defendants arose. This conclusion is consistent with the undisputed fact that Defendants had not received notice of suit, no suit had been filed by any Plaintiff at the time these documents were generated, nor were Defendants threatened with an action by Plaintiffs. The courts have required "proof of 'objective facts establishing an identifiable resolve to litigate prior to the investigative efforts resulting in the report before the work product doctrine becomes applicable.'" *Martin v. Valley National Bank of Arizona*, 140 F.R.D. 291, 308 (S.D.N.Y.1991) (quoting *Janicker v. George Washington University*, 94 F.R.D. 648, 650 (D.D.C.1982)) (citing *Fine v. Bellefonte Underwriters Insurance Company*, 91 F.R.D. 420, 422–23 (S.D.N.Y.1981))(although results of department of investigations' inquiry later became the basis for litigation, such inquiry was not attorney work-product prepared in anticipation of litigation as it was undertaken in the ordinary course of business); *Gould Inc. v. Mitsui Mining and Smelting Co.*,

*Ltd.,* 825 F.2d 676, 680 (2d Cir.1987)(the work product rule requires the existence of a real rather than a speculative concern as to the likelihood of litigation). The court fails to see how the instant litigation could have been anything other than speculative prior to December 19, 1994, if, as Plaintiffs maintain, no Plaintiff had yet, nor reasonably could have, discovered a cause of action prior to that date.

 In this case, it is clear from the time and effort expended by Plaintiffs and their attorneys prior to December 19, 1994, that someone—but not necessarily any of the Plaintiffs—considered the possibility of litigation prior to that date, although which precise claims existed, which claims may be brought, on whose behalf and against whom they may be brought had not been determined. Accordingly, it is illogical for Plaintiffs to assert that a work product privilege as to these items arose prior to December 19, 1994. Absent the accrual of the event establishing a cause of action prior to December 19, 1994 there could be no plaintiffs to assert any such claims and therefore those Privilege Log items which were prepared prior to the FRCD cannot qualify as attorney work-product. To hold otherwise would be to allow the work-product privilege to attach to any material prepared in the hope that at some future time it may be used to demonstrate to a potential plaintiff that an actionable injury had been sustained and to persuade such potential plaintiff to litigate the claim. Here, at the time, prior to the FRCD, the items were prepared, the possibility of litigation was no more than speculative, and the items therefore were not "prepared with an eye to specific litigation." *Julian, supra.*[8]

Additionally, work-product protection is not as broad as the attorney-client privilege and affords only qualified immunity from disclosure with exceptions. *Hickman, supra,* at 510, 67 S.Ct. at 393. The work-product doc-

trine may be overcome by a showing of a substantial need for the information, that the subject of the documents is probative of a key issue to the litigation, and that a party's reliance on an attorney's advice or opinion in determining an essential element of the case transformed the attorney into a fact witness. *Adlman, supra,* at p. 1501.

A showing of a substantial need for the information and undue hardship in obtaining it from any other source is one exception to the work-product doctrine. Fed.R.Civ.P. 26(b)(3); *People v. Mid Hudson Medical Group, P.C.,* 877 F.Supp. 143, 150 (S.D.N.Y. 1995). *See, e.g., A. Michael's Piano, Inc. v. Federal Trade Commission,* 18 F.3d 138, 146 (2d Cir.1994). The fact that Defendants could attempt to learn the content of those documents from Plaintiffs through other discovery methods such as interrogatories and depositions, absent access to those documents themselves, such discovery regarding what precise facts Plaintiffs' relied upon in determining the cause of their injuries for purposes of establishing the correct FRCD would be incomplete.

As with the attorney-client privilege, application of the "at issue" exception will also result in waiver of protection from disclosure of material otherwise privileged under the work-product doctrine. *AmBase, supra; Tribune Co. v. Purcigliotti,* 1997 WL 10924 (S.D.N.Y.1997); *Vermont Gas Systems, Inc. v. United States Fidelity and Guaranty Co.,* 151 F.R.D. 268 (D.Vt.1993). *See also* Discussion, *supra,* pp. 24–26. The ultimate question to be resolved from the first phase of discovery is when these claims accrued to Plaintiffs as Defendants expect to file motions which, if successful, will result in full or partial dismissal of the action based on expired applicable statutes of limitations.

The instant facts are similar to *Foley v. Juron Associates,* 1986 WL 5557 (E.D.Pa. 1986), where the plaintiffs sued for violations

---

8. The court has considered whether an ultimate determination that the FRCD was established earlier than December 19, 1994 would render this decision inconsistent insofar as the court has found that material prepared prior to December 19, 1994 could not logically have been prepared in anticipation of litigation. Accordingly, the court observes that regardless of what date is established as the correct FRCD, even if Plaintiffs could have at one time shielded those documents from discovery under the any attorney work-product doctrine, such protection was later waived when Plaintiffs placed the determination of the FRCD at issue. *See* Discussion, *infra,* at 28–30.

of the Securities Act of 1933, the Securities Exchange Act of 1934, and the Racketeer Influence and Corrupt Organizations Act, claiming they had been induced into bad investments based on a fraudulent offering memorandum. *Id.* at *1. The defendants asserted that the plaintiffs alleged that the defendants had fraudulently concealed the facts upon which the action was based to avail themselves of a tolling provision as the plaintiffs' claim was otherwise time-barred by the applicable statute of limitations. All the plaintiffs asserted the same date for the accrual of the cause of action, that date coinciding with the issuance of an investigative report prepared by consultants who had been commissioned by the plaintiffs' attorneys to investigate the feasibility of pursuing such a claim in court. *Id.*, at *2. Defendants sought to compel discovery of that report in both draft and final forms, dated both before and after the plaintiff's claimed accrual date for the cause of action. The court rejected the plaintiffs' claim that defendants could obtain substantially the same information through deposing the plaintiffs and held that, although the reports may have qualified as attorney work-product, protection from disclosure on that basis had been waived because resolution of the statute of limitations issue depended on defendants establishing "not what the purely objective facts are, but rather what facts were communicated to the plaintiffs by [the consultant] at the time plaintiffs allege that they discovered the fraud." *Id.* at *4.

Likewise, in this case, Lipsitz Green pursued the marshaling of information and facts underlying Plaintiffs' cause of action by commissioning various consultants to scientifically critique the previous environmental and health studies conducted by the NYSDOH on the Landfill, and to conduct their own extensive environmental and health studies in which the Plaintiffs participated. The preliminary findings of the environmental consultants' reports and studies commissioned by Lipsitz, Green, were shared with Plaintiffs at the December 19, 1994 meeting by Michael A. Ponterio, Esq. Plaintiffs' Responding Affidavit to Defendants' Motion to Compel Discovery, at p. 8, ¶ 19. Privilege Log items Nos. 4, 5, and 10 are subsequent and final versions of those reports. As there is no indication in the record that any of the Plaintiffs joined with Lipsitz, Green in retaining such consultants or that any Plaintiff had direct contact with the consultants, such knowledge "can realistically be shown only by the facts contained in the documents themselves." *Foley, supra,* at *5.[9]

In this case, there were numerous contacts between Plaintiffs, Lipsitz, Green, and the consultants retained by Lipsitz, Green, during the nine month period preceding the FRCD as asserted by Plaintiffs. The Privilege Log items prepared during those nine months before the asserted FRCD, indicate they were designed to update clients of Lipsitz, Green on the status of the *lawsuit.* If as Plaintiffs' contend December 19, 1994 is the earliest FRCD, no *lawsuit* could have existed prior to that date as, by definition, there as yet would have been no cause of action. It follows that if no lawsuit existed or could reasonably be contemplated prior to December 19, 1994, then the Privilege Log items dated prior to that date cannot qualify as attorney work-product. Additionally, assuming there was not yet an accrued cause of action, the court finds that the Privilege Log items dated prior to the FRCD must have been designed to allow Lipsitz, Green to keep

---

9. Additionally, by sharing their opinions and work-product concerning the cause of Plaintiffs' injuries with Plaintiffs in such a manner that Plaintiffs relied on those opinions and such asserted work-product in determining the cause of Plaintiffs' injuries, it is conceivable that the Lipsitz, Green attorneys could be called as fact witnesses with regards to the cause of Plaintiffs' injuries, subjecting Plaintiffs' attorneys' knowledge on that issue to both direct and cross-examination, and thereby waiving any attorney work-product privilege with respect to that issue. *See American Standard Inc. v. Bendix Corp.,* 80 F.R.D. 706 (W.D.Mo.1978)(where plaintiff sought to avoid the bar of the applicable statute of limitations by claiming he did not discover the fraud until it was brought to his attention by his attorney, that attorney became an "important trial witness in the case, subject to direct and cross-examination on the details of what information he had prior to [the asserted date of discovery of the fraud], and concerning the nature and timing of his conclusion (mental impression) that fraud had occurred and in what particulars it had occurred").

the potential Plaintiffs abreast of the fact-gathering efforts upon which such Plaintiffs later relied. Even if those Privilege Log items contain any legal thoughts, opinions or strategies of Lipsitz, Green attorneys, such mental impressions necessarily would have been, at that time, directed to merely *speculative* litigation, and thus would not qualify as attorney work-product.

Privilege Log items Nos. 6, 8 and 9 require special consideration as they refer to information gathered both prior to and after the asserted FRCD, by the consultants retained by Lipsitz, Green to prepare the environmental and health studies. Application of the attorney work-product to those documents is limited to the extent that the information contained therein was gathered after December 19, 1994. Specifically, item No. 8 contains both a cover letter and several documents, each titled Property Contamination Summary bearing the word "DRAFT" and a "Confidential Work Product" stamp. The associated cover letter shall be disclosed as it does not contain any information that is advisory in nature. The summaries contain information based on samples collected from six different properties in the vicinity of the Pfohl Landfill, 707, 711 and 260 Aero Drive, 575 Stile Court, 176 and 172 Rehm Road.

According to the Product Contamination Summary for 707 Aero Drive, five samples were collected as to this property on three separate dates between October 14, 1994 and April 19, 1995. Although the exact dates on which those samples were collected are not provided, the court assumes that one was collected on October 14, 1994 and another on April 19, 1995. The court will withhold a determination as to the discoverability of the information pertaining to 707 Aero Drive and allow the Plaintiffs, should they wish to continue to assert that such information is protected by the attorney work-product doctrine, to deliver to the court within ten days of this decision, an affidavit informing the court exactly when such samples were collected from 707 Aero Drive. Provided that at least two of those samples were collected prior to December 19, 1994, the information shall describe the precise nature of the sample collected after the asserted FRCD sufficient to allow the court to determine to what extent that third sample differed from the earlier two, such that the entire general summary relative to 707 Aero Drive is substantially related to the third sample, and therefore warrants protection from disclosure.

▇ As the samples collected from 711 and 260 Aero were collected after December 19, 1994, the Property Contamination Summaries prepared from the analysis of such samples are protected from disclosure by the attorney work-product doctrine. Additionally, as the samples collected from 575 Stiles Court and 172 Rehm Road on which their respective Property Contamination Summaries are based, were collected prior to the asserted FRCD, those summaries shall be disclosed as they do not fall within the protection of attorney work-product. Further, the Property Contamination Summary for 176 Rehm Road refers to two samples which were collected after the FRCD, as well as to testing conducted by the NYSDOH on April 22, 1994, and May 9, 1994. That information is in such a format that it can be easily redacted by Plaintiffs and thus Plaintiffs shall disclose the Property Contamination Summary for 176 Rehm Road in redacted form as to information gathered after December 19, 1994.

With regard to Privilege Log item No. 9, the court finds that to the extent it pertains to properties not included in the Property Contamination Summaries, the Plaintiffs have failed to meet their burden of proof in establishing that this information qualifies as attorney work-product. However, to the extent that item No. 9 relates to 707 Aero Drive, the court will reserve decision on the discoverability of item No. 9 pending receipt of information from Plaintiffs of the relevant information requested with regards to Privilege Log item No. 8. Upon receipt of such information, the court will then determine whether any part of Privilege Log item No. 9 is protected from disclosure as attorney work-product and as such should be disclosed in redacted form, or whether item No. 9 should be disclosed in its entirety.

Privilege Log item No. 6 is a draft of the Pfohl Environmental Health Study prepared from data collected pursuant to the health

study in which residents within the vicinity of the Landfill participated, and the samples collected from properties within the vicinity of the Landfill. It appears upon examination of this document that most of the data from which it was prepared was collected prior to the asserted FRCD and should be disclosed to that extent. However, as with Privilege Log item No. 8, the court requests that should Plaintiffs wish to continue to assert that such information is protected by the attorney work-product doctrine, Plaintiffs shall deliver to the court within ten days of this decision, an affidavit informing the court exactly what information contained in item No. 8 was collected after December 19, 1994, describing the precise nature of such data to allow the court to determine to what extent that report is based on data acquired after the FRCD and whether that report therefore warrants protection from disclosure.

▮ The FRCD as asserted here carries significant limitations on the degree to which Plaintiffs may resist Defendants' discovery requests. If the purpose of the contacts between Lipsitz, Green and the potential Plaintiffs over the nine months preceding Plaintiffs' asserted FRCD was to inform Plaintiffs of Lipsitz, Greens' retained consultants scientific studies upon which Plaintiffs later relied in determining the cause of their injuries, then any attorney work-product protection has been waived as to such information as the attorneys have become fact-witnesses regarding the validity of the asserted FRCD. If December 19, 1994 is the correct FRCD, then the work-product doctrine never applied to those items dated prior to the FRCD as no cause of action existed during the prior period and thus there were no plaintiffs prior to that date for whose benefit the work-product doctrine could apply. Disclosure of those documents is required in the interests of justice for a final determination of the FRCD. Applying the work-product privilege to the period prior to December 19, 1994 would insulate the attorneys from becoming fact witnesses as to the information created during that period and prevent its discovery notwithstanding that neither any cause of action nor plaintiffs existed. For these reasons, the work-product doctrine never attached to Privilege Log items Nos.

16, 17, 18, 19, 20, 21, 22 and 30, and has been waived as to Privilege Log items Nos. 1, 2, 4, 5, 7, 10, 11, 12, 13, 14, and 15. The court finds that Privilege Log items No. 23, a map that purportedly shows some of the results of the health study, is protected from disclosure under the work-product doctrine because it both qualified as attorney work-product and because it does not contain information relating to the FRCD. Privilege Log items Nos. 6, 8 and 9 shall be delivered to the court in redacted form in accordance with the above discussion, within ten days of the entry of this decision, for further *in camera* review.

## CONCLUSION

Based on the foregoing and its review of the documents at issue on the motions, the court concludes that Privilege Log items Nos. 1, 2, 3, 4, 5, 7, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 24, 25, 26, 27, 29, and 30, are not within the protection of either the attorney-client privilege or work-product doctrine and shall therefore be disclosed to Defendants within ten days of receipt of this order. However, the court finds that Privilege Log item No. 23 is protected from disclosure by the work-product doctrine, and Privilege Log item No. 28 is protected by the attorney-client privilege and need not be disclosed. Privilege Log items Nos. 6, 8 and 9 shall be redacted in accordance with this decision, and delivered to the court within ten days of this decision.

Plaintiffs' motion for this court to adopt the proposed Privilege Log is GRANTED, in part and DENIED, in part; Defendants' motion to compel disclosure is GRANTED, in part and DENIED, in part.

SO ORDERED.